FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 23, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| FRANK C., <br><br> Plaintiff, <br> v. <br><br> ANDREW M. SAUL, Commissioner of the Social Security Administration, <br><br> Defendant. | No: 4:19-CV-05217-FVS <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 10, 11. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Justin L. Martin. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment, ECF No. 10, **DENIES** Defendant's Motion for Summary Judgment, ECF No. 11, and **REMANDS** the case for additional proceedings consistent with this Order.

ORDER ~ 1

# JURISDICTION

Plaintiff Frank C.[1] filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on June 10, 2013 and June 7, 2013, respectively, Tr. 214, 215, alleging disability since December 30, 2008, Tr. 438, 445, due to arthritis, back pain, diabetes, depression, nightmares, high blood pressure, learning disabilities, high cholesterol, and bilateral hand pain, Tr. 523.[2] Benefits were denied initially, Tr. 304-12, and upon reconsideration, Tr. 316-20.[3] A hearing before Administrative Law Judge Glen Meyers ("ALJ") was conducted

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

[2] Plaintiff filed a set of previous DIB and SSI applications on May 9, 2012, Tr. 188-89, also alleging an onset date of December 30, 2008, Tr. 423, 430.  These applications were denied initially on July 23, 2012.  Tr. 300.  Plaintiff did not appeal this denial.  The Court finds that by making a determination of disability pertaining to the period of time at issue in the prior May 2012 application, the ALJ de facto reopened the prior adjudication.  *See Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001).

[3] There is no denial for the SSI claim at the reconsideration level in the record.

ORDER ~ 2

1   on July 1, 2014.  Tr. 74-93.  Plaintiff was represented by counsel and testified at

2   the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Kimberly

3   Mullinax.  *Id*.  At this hearing, Plaintiff amended his onset date to September 1,

4   2011.  Tr. 95.  The ALJ denied benefits on January 12, 2015.  Tr. 263-80.  The

5   Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision,

6   and remanded the case for additional proceedings on July 15, 2016.  Tr. 287-92.

7   The ALJ held a second hearing on May 18, 2017, and took testimony from

8   Plaintiff, medical expert Darius Ghazi, M.D., psychological expert Stephen Rubin,

9   Ph.D., and vocational expert Anne Jones.  Tr. 97-187.  The ALJ made a partially

10  favorable decision on May 25, 2018 finding that Plaintiff was not disabled as

11  defined in the Social Security Act prior to December 8, 2013, but that he became

12  disabled on December 8, 2013.  Tr. 44-45.  The Appeals Council denied Plaintiff's

13  request for review on July 17, 2019.  Tr. 1-6.  The matter is now before this Court

14  pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

16  The facts of the case are set forth in the administrative hearing and

17  transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

18  Only the most pertinent facts are summarized here.

19  Plaintiff was 52 years old at the amended onset date.  Tr. 438.  When

20  applying for benefits, Plaintiff stated that the last grade he had completed was the

21  tenth grade in 1974 and that he received his certified nursing assistant (CNA)

ORDER ~ 3

1 training in 1998. Tr. 524. In his previous application, he had stated that the last
2 grade he completed was the sixth grade. Tr. 90. Plaintiff's past work includes jobs
3 as a CNA, as a childcare provider, and as a homecare provider. Tr. 525. At
4 application, he stated that he stopped working on January 1, 2010 because of his
5 conditions. Tr. 524.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

ORDER ~ 4

Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

ORDER ~ 5

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and

ORDER ~ 6

mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*

ORDER ~ 7

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 1, 2011, the amended alleged onset date.  Tr. 26.  At step two, the ALJ found that Plaintiff has the following severe impairments since his application date of September 1, 2011: osteoarthritis in his bilateral hands; degenerative disc disease of his cervical, thoracic, and lumbar spine; degenerative joint disease of his left shoulder and left hip; a learning disability; depressive disorder; and malingering.  Tr. 27.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27.  The ALJ then found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1537(b), 416.967(b) except he has the following limitations:

> [t]he clamant can perform frequent handling, fingering, and feeling. The claimant can perform occasional stooping, squatting, crouching, crawling, kneeling, and climbing stairs and ramps, but can never climb ropes, ladders, or scaffolds. The claimant is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. The claimant can have superficial incidental contact with public, is capable of working in proximity to but not in coordination with coworkers, and can have occasional contact with supervisors. The claimant can be

ORDER ~ 8

absent from work seven days per year and be off task up to 10% of the time, but can still meet the minimum production requirements of the job.

Tr. 31.

At step four, the ALJ identified Plaintiff's past relevant work as nurse assistant and home attendant, and found that he is not capable of performing this past relevant work. Tr. 43.

At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that he could perform until December 8, 2013, including conveyor line bakery worker, laboratory sample carrier, and collator operator. Tr. 43-44. Beginning on December 8, 2013, plaintiff's age category changed and he was found disabled following an application of Medical-Vocational Rule 202.02. Tr. 44. The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 11, 2011 up to December 8, 2013, but beginning December 8, 2013 and through the date of his decision Plaintiff is disabled. Tr. 44-45.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying his DIB under Title II and SSI under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ erred at step five in finding Plaintiff had a limited

ORDER ~ 9

        education;

2.     Whether the ALJ erred in finding malingering as a severe impairment at step two;

3.     Whether the ALJ properly considered Plaintiff's symptom statements; and

4.     Whether the ALJ properly addressed the medical opinions in the record.

## DISCUSSION

**1. Education**

Plaintiff argues that he is illiterate, and the ALJ erred in his step five determination by finding that he had a limited education. ECF No. 10 at 21.

Once a claimant establishes a prima facie case of disability by demonstrating that he cannot return to his former employment at step four, the burden then shifts to the Commissioner to show that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience. *Tackett*, 180 F.3d at 1098. At step five of the sequential evaluation process, the Commissioner can satisfy this burden by either (1) applying the Medical-Vocational Guidelines ("Grid Rules") in appropriate circumstances or (2) taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Grid Rules are an administrative tool on which the Commissioner must rely when considering claimants with substantially equivalent levels of impairment. *Id*. The Grid Rules reflect the claimant's maximum sustained exertional work capacity. *See* S.S.R. 83-10 ("exertional capabilities" are used "to

ORDER ~ 10

1  identify maximum sustained work capability"). Under Grid Rule 202.09, if a

2  claimant is limited to light work, is closely approaching advanced age, defined as

3  age 50 to 54, is illiterate or unable to communicate in English, and his previous

4  work experience is unskilled or none, then he is found disabled. 20 C.F.R. Pt 404,

5  Subpt P. App 2. However, under Grid Rule 202.10, if the same factors are met, but

6  the claimant's education is defined as "Limited or less – at least literate and able to

7  communicate in English" then the claimant is found not disabled. *Id*. Therefore,

8  based on the ALJ's RFC determination that Plaintiff is limited to light work, Tr.

9  31, and he is precluded from performing his past relevant work, Tr. 43, then a

10 finding of disability at the alleged application date turns on Plaintiff's education

11 level. The ALJ's discussion of Plaintiff's education level is contained in a single

12 sentence: "The claimant has a limited education and is able to communicate in

13 English." Tr. 43.

14      Plaintiff repeatedly alleged difficulties with reading and writing in his

15 communications with Social Security. When Plaintiff first applied for benefits in

16 May of 2012, he alleged that he was not able to read or write, that he only

17 completed the eighth grade, and was in special education. Tr. 486. However, he

18 completed his own initial Disability Report form in June of 2012 and stated on that

19 form that the highest grade he completed was the sixth grade. Tr. 488, 490. On his

20 Function Report in June of 2012, he stated that his reading skills were "very poor,"

21 Tr. 513, and the form was completed by a third-party, Tr. 515. On his second

ORDER ~ 11

1    application, he alleged that the highest grade he completed was the tenth grade.  Tr.

2    524.  On his Disability Report form in July of 2013, Plaintiff stated that he could

3    read and understand English, Tr. 522, but an individual at his attorney's firm

4    complete the form, Tr. 523.  His Work History Report was completed by a legal

5    assistant stating that Plaintiff "is unable to read or write, I acted as scribe for him.

6    He answered all questions and I wrote as directed."  Tr. 553.  On his July 2013

7    Function Report, Plaintiff stated "I am illiterate.  I cannot read or write."  Tr. 559.

8    A third party completed this form on his behalf.  Tr. 561.  By January of 2014,

9    when asked about his ability to follow written instructions on a Function Report,

10   Plaintiff stated "I can't see."  Tr. 578.  This Function report was also completed by

11   a third party on Plaintiff's behalf.  Tr. 580.  At the hearing, Plaintiff testified that

12   he had difficulty reading, that he was in special classes all his life, that he took his

13   CNA test orally, and that his reading difficulties affected his ability to drive.  Tr.

14   156, 176-78, 183-84

15        In the medical records, Plaintiff also reported difficulty with reading and

16   writing.  Plaintiff reported that he lost his last job as a CNA because the charting

17   went to computers and it was more difficult for him.  Tr. 677.  In June of 2012, his

18   counselor noted that Plaintiff "filled out the entire questionnaire but said he cannot

19   read or write."  Tr. 678.  In July of 2012, he was unable to answer questions

20   regarding his disability, stating "I guess because I didn't finish school and I can't

21   read or write very well."  Tr. 762.  His counselor accommodated his difficulty in

ORDER ~ 12

1  reading by reviewing the subjects and lessons during sessions.  Tr. 830, 831.  A

2  WAIS-IV placed Plaintiff's full-scale IQ at 61, which is described as extremely

3  low.  Tr. 727.  At the second hearing, the psychological expert Dr. Rubin testified

4  that his literacy needed to be tested and that he would have liked to see a recent

5  psychological consultative evaluation.  Tr. 125, 127.

6       The Ninth Circuit has clearly established that the Commissioner has the

7  burden of establishing that the claimant is literate.  *Silveira v. Apfel*, 204 F.3d

8  1257, 1261-62 (9th Cir. 2000).  The record demonstrates that Plaintiff's ability to

9  read and write are compromised, but it is unclear to what degree.  When the record

10 is ambiguous or inadequate to allow for a proper evaluation, the ALJ has a duty to

11 develop the record.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001);

12 *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) ("The ALJ's duty to

13 supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own

14 finding that the record is inadequate[,] or the ALJ's reliance on an expert's

15 conclusion that the evidence is ambiguous.").

16      Here, the burden is on the Commissioner to establish Plaintiff's literacy, and

17 the record is ambiguous regarding Plaintiff's literacy and education level.

18 Therefore, the ALJ erred by failing to develop the record and provide a discussion

19 supporting the ultimate literacy determination.  The case is remanded for the ALJ

20 to send Plaintiff for a psychological consultative evaluation that includes a literacy

21 assessment, to make a determination at step five in regards to Plaintiff's literacy

ORDER ~ 13

1  and education, and to provide an explanation of the literacy and education

2  determination.

3  **2.    Malingering**

4  Plaintiff challenges the ALJ's step two determination that malingering is a

5  severe medically determinable impairment.  ECF No. 10 at 4-7.

6  On December 8, 2015, Rebekah Cline, Psy.D. completed a

7  Psychological/Psychiatric Evaluation for the Washington Department of Social and

8  Health Services (DSHS).  Tr. 900-04.  She administered a Rey Memory Test at the

9  beginning of the evaluation, which indicated an average level of effort and

10 cooperation with the task.  Tr. 900.  However, she subsequently performed a Test

11 of Memory Malingering (TOMM), and Plaintiff's scores were "not sufficient to

12 rule-out malingering."  *Id*.  Dr. Cline stated that "malingering must be diagnosed at

13 this time and the following taken with great caution."  *Id*.  She diagnosed Plaintiff

14 with malingering and determined that Plaintiff's mental functional abilities were

15 indeterminable.  Tr. 901-02.

16 Plaintiff argues that POMS DI 22510.006 precludes the ALJ from relying on

17 the TOMM scores to establish malingering.  ECF No. 10 at 5.  However, POMS DI

18 225110.006 precludes the agency from purchasing symptom validity tests such as

19 the Rey Memory Test and the TOMM, stating that "[t]ests cannot prove whether a

20 claimant is malingering because there is no test that, when passed or failed,

21 conclusively determines the claimant's motivation.  Malingering requires a

ORDER ~ 14

1  deliberate attempt to deceive." Despite this statement, the provision goes on to

2  state that "[w]hen the results of [symptom validity tests] are part of the medical

3  evidence of record, we consider them along with all of the relevant evidence in the

4  case record."  POMS DI 22510.006.

5  Here, Social Security did not purchase the tests.  They were administered as

6  part of a DSHS evaluation.  Therefore, POMS DI 22510.006 was not violated.

7  However, this case highlights some conflict between the statement that

8  "[m]alingering requires a deliberate attempt to deceive," and "[w]hen the results of

9  [symptom validity tests] are part of the medical evidence of record, we consider

10  them along with all of the relevant evidence in the case record." POMS DI

11  22510.006.  The results of the Rey Memory Test demonstrated average effort.  Tr.

12  900.  The TOMM could not rule out malingering.  *Id*.  There was a diagnosis of

13  malingering.  Tr. 902.  The POMS states that  "[t]ests cannot prove whether a

14  claimant is malingering because here is no test that, when passed or failed,

15  conclusively determines the claimant's motivation."  POMS DI 22510.006.

16  Therefore, there is the presumption the that test results alone are insufficient to

17  support a finding of malingering by the ALJ.  The ALJ's determination does not

18  provide a basis for the finding of malingering outside of the symptom validity tests

19  administered by Dr. Cline.  Tr. 40.  Furthermore, Plaintiff accurately raises the

20  question of whether malingering can meet the durational requirements of step two

21  considering Dr. Cline stated that Plaintiff needed to be reevaluated in six months.

ORDER ~ 15

ECF No. 10 at 5-6; Tr. 903. Since this case is being remanded for the ALJ to send Plaintiff for a new psychological consultative evaluation to establish literacy, the ALJ will readdress Plaintiff's psychological impairments at step two, including the diagnosis of malingering. The ALJ will call a psychological expert to provide testimony regarding Plaintiff's severe impairments at step two and provide testimony regarding the diagnostic criteria for malingering and whether it meets the durational requirement at step two.

### 3. Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's determination that his symptom statements were unreliable. ECF No. 10 at 18-21.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence,

ORDER ~ 16

and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 34.  Here, the ALJ found that Plaintiff was malingering.  Tr. 27. Additionally, the ALJ found that Plaintiff's statements were inconsistent with his described daily activities and were not supported by the medical evidence.  Tr. 32.

As discussed above, the ALJ's finding that Plaintiff was malingering at step two will be readdressed upon remand.  Therefore, upon remand the ALJ will also address the reliability of Plaintiff's statements.  In doing so, the ALJ will adhere to the Ninth Circuit's warning in *Garrison v. Colvin*:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

759 F.3d 995, 1016 (9th Cir. 2014).

**4.    Medical Source Opinions**

Plaintiff challenges the weight the ALJ assigned to the medical opinions in the record.  ECF No. 10 at 7-18.  This case is being remanded for the ALJ to send Plaintiff out for a new psychological consultative evaluation to address his literacy. Upon remand, the ALJ will readdress the medical opinions in light of the record as a whole.

**CONCLUSION**

The decision whether to remand for further proceedings or reverse and

ORDER ~ 17

award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, the record regarding Plaintiff's literacy needs to be developed, and the ALJ must provide an explanation for his literacy and education determination. Therefore, the Court remands this case for further proceedings consistent with this Order. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose).

On remand, the ALJ shall (1) send Plaintiff for a psychological consultative

ORDER ~ 18

evaluation that includes a literacy assessment, (2) make a new step two determination regarding Plaintiff's psychological impairments, including malingering, (3) readdress Plaintiff's symptom statements, and (4) readdress the medical opinions in the record.  In addition, the ALJ should take the testimony of a psychological expert and vocational expert at remand proceedings.  This remand shall be limited to the period of September 1, 2011 through December 8, 2013, and shall not reverse the ALJ's favorable decision as of December 8, 2013.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED, in part,** and the matter is remanded for further proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 11 is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

**DATED** July 23, 2020



Stanley A. Bastian
United States District Judge

ORDER ~ 19